## United States District Court
## Southern District of Illinois

Timothy Owens and Shelley Owens,⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀Plaintiffs,⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀Case No. 3:16-CV-01009-JPG-RJD
⠀⠀⠀⠀⠀v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
Prairie State Generating Company,⠀⠀⠀)⠀⠀⠀**ORAL ARGUMENT REQUESTED**
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀Defendant.⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)

### Defendant Prairie State Generating Company's
### Memorandum Supporting Its Summary Judgment Motion

Defendant Prairie State Generating Company ("**Prairie State**") is a power company with operations located in Marissa, Illinois. Plaintiff Timothy Owens is Prairie States' former Facilities Manager. Plaintiff Shelley Owens is Timothy Owens' spouse.

Plaintiff Timothy Owens (also referred to as "**Plaintiff**" or "**Owens**") went on medical leave to participate in drug rehabilitation around September 25, 2014. While Plaintiff was being treated, his supervisor Mike Slade ("**Slade**") assumed his job duties. While Mr. Slade was assuming those duties, he discovered that Plaintiff had violated Prairie States' Code of Business Conduct and Ethics and other policies by engaging in actions including: (1) occupying a house on Prairie States' premises located on Biddleborn Road without paying rent or entering into a written lease agreement; (2) allowing a woman Prairie State believed to be Mr. Owens' mistress to live in a third rental property on Prairie States' premises without a signed lease and without making rental payments; and (3) other assorted performance problems.

1

These actions were in specific violation of Prairie States' Code of Business

Conduct and Ethics policy which reads:

> Conflicts of interest may also arise when an employee, or members of
> his or her family, receives improper personal benefits as a result of his
> or her position in the Company.

<u>Timothy Owens admitted in deposition that he received this policy, understood it,</u>

<u>and that he knew that if he violated it, he was subject to discharge.</u>

Plaintiff was released from rehabilitation on October 22, 2014 and informed

his supervisor that he was ready to return to work on October 27, 2014. On October

28, 2014, Prairie State called Plaintiff in to discuss its concerns with his actions and

Prairie State discharged Plaintiff on October 31, 2014, based on its reasonable belief

that Plaintiff had violated its policies.

While Mr. Owens claims Prairie State discharged him for exercising his

FMLA rights, he admitted in deposition that he does not have any evidence to

support his claims. In fact, all of the evidence suggests the opposite. Prairie State

repeatedly encouraged Mr. Owens to take FMLA leave to care for his spouse and to

get himself help following some personal issues, and while Prairie State has a long

list of employees who have taken leave, all of those employees continued their

employment following their return. Finally, although Prairie State discovered

Timothy Owens' activities while he was on FMLA leave, as a matter of law, an

employer may discharge an employee for misconduct discovered while the employee

was on FMLA leave.

Mr. and Ms. Owens also bring claims for intentional infliction of emotional

distress alleging that Prairie State evicted Ms. Owens from one of the two houses

that she and her husband occupied on Prairie State's premises at a time it should have known she was unable to obtain help moving. However, the evidence shows that Prairie State required Ms. Owens to move out of its property for valid reasons – she was not paying rent and did not have Prairie State's authorization to occupy the second house -- or a written lease. In addition, Ms. Owens testified that she did not ask for an extension of time or otherwise let Prairie State know that she needed additional time to move out, and while she was required to move out of the Biddleborn home, she still had a written lease to stay at Prairie State's property on Clover Road. Summary judgment is proper because Prairie State's conduct was reasonable and not the outrageous conduct necessary to state a claim for intentional infliction of emotional distress as a matter of law.

## Undisputed Material Facts

1.  Prairie State hired Timothy Owens as a Facilities Manager on December 19, 2011. Deposition of Timothy Owens dated August 31, 2017 ("TOwens Depo.") at 7:10-23, 45:8-46:21.

2.  Timothy Owens' job duties as Facilities Manager included managing 11 residential properties owned by Prairie State, some of which were rented to employees and others. TOwens Depo. at 40:16-41:12.

3.  Shelley Owens and Timothy Owens signed a written lease agreement with Prairie State allowing the Owens to rent Prairie State's house located at 4180 Clover Road, Marissa, Illinois. TOwens Depo. at 66:25-67:17.

4.      Timothy Owens supervised a number of individuals as Facilities Manager. TOwens Depo. at 44:12-45:1.

5.      In early 2014, Prairie State assigned Mike Slade to supervise Timothy Owens. TOwens Depo. at 38:8-39:3; Deposition of Michael Slade dated June 20, 2017 ("Slade Depo.") at 8:20-9:5, 18:23-19:4.

6.      Mike Slade noticed a decline in Timothy Owen's job performance beginning in mid-August 2014. TOwens Depo. at 131:7-24; Slade Depo. at 18:23-19:4; Plaintiff's Exhibit 1 (authenticated by Slade Depo. at 19:7-21:10).

7.      On September 8, 2014, Mike Slade met with Timothy Owens to address his performance deficiencies. TOwens Depo. at 131:7-24; Slade Depo. at 19:7-21:1; Plaintiffs' Exhibit 1 (authenticated by Slade Depo. at 19:17-21).

8.      On or about September 8, 2014, Mike Slade suggested Timothy Owens contact the employee assistance program to get help. TOwens Depo. at 131:7-132:2; Slade Depo. at 19:7-21:1; Plaintiffs' Exhibit 1.

9.      Timothy Owens checked in with the employee assistance program and obtained FMLA paperwork from Prairie State around the time of the September 8, 2014 meeting. TOwens Depo. at 134:24-135:15.

10.     On September 19, 2014, Timothy Owens told Mike Slade that Owens had to go to a rehabilitation facility for help getting off ADHD medicine and to stop smoking. Slade Depo. at 21:14-22:10; Plaintiffs' Exhibit 1.

11.     In their September 19, 2014 meeting, Timothy Owens admitted he was not thinking or performing and that he could not continue that way. Slade Depo. at 24:12-25:3; Plaintiffs' Exhibit 3 (authenticated by Slade Depo. at 24:12-25:3).

12.     Slade encouraged Timothy Owens to get help as quickly as possible and told him Prairie State would cover his job duties while he was absent. TOwens Depo. at 134:21-135:15, Plaintiffs' Exhibit 3, Slade Depo. at 24:17-26:7.

13.     Prairie State had previously encouraged Timothy Owens to take FMLA leave to care for his wife Shelley Owens in April 2014. TOwens Depo. at 63:14-65:7.

14.     Prairie State approved Timothy Owens' FMLA leave application on September 23, 2014 and Owens commenced FMLA leave within two days after that. TOwens Depo. at 160:7-25; Exhibit 6A (authenticated by TOwens Depo. at 76:20-79:12).

15.     Timothy Owens' FMLA leave did not have a definitive end date, so Owens was to report on his progress weekly. TOwens Depo. at 164:8-167:11; Exhibit 6A.

16.     As part of his job duties as Facilities Manager, Timothy Owens was responsible for maintaining a spreadsheet listing all of Prairie State's rental properties that also contained details about who was renting the property and confirming details about the written lease and the rental amount. TOwens 117:24-120:3, 131:2-6; Plaintiffs' Exhibit 5 (authenticated by Slade Depo. at 30:22-31:3).

17.     On September 19, 2014, Slade emailed Owens asking him to update the rental property spreadsheet for a meeting Slade had later that day. TOwens

117:24-120:3; 131:2-6; Exhibit 12 (spreadsheet portion authenticated by TOwens Depo. at 117:24-119:24); Slade Depo. at 50:9-51:19.

18.     Timothy Owens prepared an updated spreadsheet that listed his wife at both 4180 Clover and 5744 Biddleborn Road and a woman named Charlie Swankhouse at 2953 Marigold Road. TOwens Depo. at 119:7-122:13.

19.     Timothy Owens' rental property spreadsheet listed rental amounts for the Biddleborn and Marigold properties. TOwens 117:24-120:21, 121:19-122:2; 131:2-6; Exhibit 12.

20.     Slade discovered that neither Shelley Owens nor Charlie Swankhouse signed written lease agreements or paid any rent on the Biddleborn and Marigold Road properties. Deposition of Shelley Owens dated August 31, 2017 ("SOwens Depo.") at 12:4-13; Slade Depo. at 34:21-35:5, 51:5-52:23; TOwens Depo. at 121:19-122:17.

21.     Mr. Owens moved Charlie Swankhouse into a Prairie State rental property without a lease and without rental payments. TOwens Depo. at 58:1-59:11.

22.     While Owens was on FMLA leave, Slade took over Timothy Owens' responsibilities and performed the Facilities maintenance work. Slade Depo. at 51:23-52:8.

23.     Slade discovered a number of performance deficiencies when he was filling in as Facilities Manager for Timothy Owens. Slade Depo. at 76:14-78:24; Plaintiffs' Exhibit 12 (authenticated by Slade Depo. at 76:14-77:3); Plaintiffs' Exhibit 13 (authenticated by Slade Depo. at 77:4-18).

24.     Slade reported those deficiencies and worked with Human Resources personnel at Prairie State and legal counsel to investigate those issues. Slade Depo. at 56:16-57:5, 78:10-24.

25.     Timothy Owens was released from rehabilitation on October 22, 2014. TOwens Depo. at 83:21-25; 146:3-10; Slade Depo. at 43:18-44:4.

26.     On October 27, 2014, Timothy Owens texted Slade that Owens was ready to return to work, writing "When do I get to come back to work?  I'm chewing the paint off my walls." TOwens Depo. at 83:21-25; 146:3-10; Slade Depo. at 43:18-44:4.

27.     Prairie State informed Plaintiff that he was to remain off work without pay pending an investigation of his misconduct. Slade Depo. at 42:21-43:8, 43:18-44:4.

28.     On October 27 and 28, Slade and Timothy Owens exchanged text messages and Timothy Owens agreed to come to a meeting on October 28 at 3:00 p.m. TOwens Depo. at 147:5-148:1; Exhibit 14.

29.     On October 28, 2014, Slade and Human Resources Director Rita Bauman ("**Bauman**") met with Timothy Owens to discuss the performance issues Slade found while he was handling Owens' job duties. TOwens Depo. at 52:19-53:24, Slade Depo. at 42:21-43:8, 48:2-9; Plaintiffs' Exhibit 8 (authenticated by Slade Depo. at 48:10-49:8).

30.     After investigating Timothy Owens' version of events, Slade decided discharge was appropriate. Slade Depo. at 77:6-78:24.

31.     Slade arranged a second meeting with Owens on October 31, 2017. TOwens Depo. at 148:20-150:9

32.     Timothy Owens agreed that October 31, 2014 at 10:30 a.m. was a good time for him to meet. TOwens Depo. at 148:20-150:9.

33.     On October 31, 2014, Slade and Bauman met with Timothy Owens and informed him Prairie State was terminating his employment because he violated the Employee Conduct and Work Rules and Code of Business Conduct and Ethics policies and because he was not candid or forthcoming, leading Prairie State to lose confidence in him. TOwens Depo. at 49:24-50:21, 148:20-150:9; Exhibit 3 (authenticated by TOwens Depo. at 49:25-50:11).

34.     Timothy Owens admitted in deposition if he did the things Prairie State believed he did, it would violate Company policy and be grounds for discharge. TOwens Depo. at 47:15-48:2, 48:16-49:19, 57:2-13; Plaintiffs' Exhibit 10 (Code of Business Conduct and Ethics) (authenticated by Slade Depo. at 58:17-60:4); Plaintiffs' Exhibit 11 (Employee Conduct and Work Rules) (authenticated by Slade Depo. at 58:17-60:4).

35.     Also on October 31, 2014, Slade issued a letter terminating Timothy and Shelley Owens' lease on the Clover Road property effective December 1, 2014; and later extended the date to mid-December at Owens' request. TOwens Depo. at 50:19-24; 66:22-67:23; Exhibit 5 (authenticated by TOwens Depo. at 66:22-67:6).

36.     In deposition, Timothy Owens could not identify a single similarly-situated employee who he believes was treated more favorably than he was treated

8

– instead, he summarily claimed Prairie State discharged him because it found out
he may request more leave than initially believed. TOwens Depo. at 18:8-20:15.

37.     Between 2001 and 2014, Prairie State had employees use FMLA leave
133 times. Affidavit of Rita Bauman dated October 4, 2017 at ¶ 5 ("Bauman Aff.");
Exhibit A.

38.     Of the employees who requested FMLA leave between 2011 and 2014,
all of them were employed as of January 2017 except for Plaintiff Timothy Owens.
Bauman Aff. at ¶ 6; Exhibit A.

## Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides that summary judgment is
appropriate "if the pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any, show that there is no genuine
issue as to any material fact and that the moving party is entitled to a judgment as
a matter of law." Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a
matter of law when the non-moving party has failed to make a sufficient showing on
an essential element of her case with respect to which she has the burden of proof.
*Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). A genuine issue of material fact
arises only if sufficient evidence favoring the non-moving party exists that would
permit a jury to return a verdict for that party. *Ajayi v. Aramark Bus. Servs., Inc.,*
336 F.3d 520, 527 (7th Cir. 2003).

## Analysis

Plaintiffs' First Amended Complaint contains three claims: (1) FMLA interference for interviewing and discharging Plaintiff Timothy Owens while he was allegedly still taking FMLA leave; (2) FMLA discrimination/retaliation for discharging Plaintiff Timothy Owens' employment allegedly in retaliation for his taking FMLA leave; and (3) intentional infliction of emotional distress against both Plaintiffs for allegedly evicting them from Prairie State-owned rental property at an inopportune time. Defendant moves for summary judgment on all of Plaintiffs' claims because Plaintiffs cannot establish essential elements of any of the claims.[1]

## I.   Plaintiff Timothy Owens' Family Medical Leave Act interference claim fails because Plaintiff Owens received all of the leave to which he was entitled.

Plaintiff Timothy Owens received all of the FMLA leave to which he was entitled. Prairie State approved FMLA leave until Owens was ready to return to work from drug rehabilitation. See, *supra*, Undisputed Material Facts Section ("Material Facts") at ¶¶ 14-15, 25-26. Timothy Owens was released from drug rehabilitation on October 22, 2014 and he asked to return to work no later than October 27, 2016, writing "When do I get to come back to work?  I'm chewing the paint off my walls." Material Facts at ¶¶ 25-26. Prairie State informed Plaintiff that he was to remain off work without pay pending an investigation of his misconduct and ultimately, determined that Plaintiff's misconduct warranted discharge. Material Facts at ¶¶ 27, 30.

---

[1] If the Court grants Summary Judgment in favor of Defendant on Plaintiffs' claims, Defendant requests that the Court decline to exercise supplemental jurisdiction over Defendant's counterclaims (which all arise under state law).

The Family Medical Leave Act ("FMLA") entitles eligible employees 12 workweeks of leave for covered absences. 29 U.S.C. § 2612(a)(1); 29 C.F.R. §§ 825.100(a), 825.112, 825.200. Employees have a conditional right to reinstatement to the same (or an equivalent) position of employment after their leave. *See, e.g., Kohls v. Beverly Enterprises Wis., Inc.*, 259 F.3d 799, 804 (7th Cir. 2001) (*citing* 29 U.S.C. § 2614(a)(3)(B)).

In *Kohls*, the Seventh Circuit affirmed summary judgment in favor of an employer that discharged the plaintiff on the day she returned from FMLA leave because the employer discovered that she mismanaged a trust fund of resident money and the employer became dissatisfied with her job performance while the plaintiff was on FMLA leave. *Id.* at 805. The facts of this case are very similar.

In this case, Timothy Owens had performance problems before he went on FMLA leave. Material Facts at ¶¶ 6-12. While Timothy Owens was on leave, his supervisor Mike Slade discovered that Owens had violated Prairie State's Code of Business Conduct and Ethics policy by claiming that his wife and another woman had signed leases and paid rent on their respective Prairie State rental properties when they had not. Material Facts at ¶¶ 16-20, 22. Slade also discovered other performance problems. Material Facts at ¶ 23. Slade worked with Human Resources personnel and legal counsel to investigate these issues and then met with Owens to get his version of events. Material Facts at ¶¶ 24, 29. After investigating Owens' responses, Slade determined discharge was appropriate. Material Facts at ¶ 30. Because Prairie State discharged Owens because it reasonably believed he was

guilty of misconduct, it did not interfere with his FMLA leave as a matter of law. *See, Kohls*, 259 F.3d at 804; *see also, Daugherty v. Wabash Cent., Inc.*, 577 F.3d 747 (7th Cir. 2009); *Ogborn v. Un. Food and Commercial Workers Union, Local No.* 881, 305 F.3d 763 (7th Cir. 2002).

## II.   Plaintiff Timothy Owens' Family Medical Leave Act discrimination claim fails because Prairie State discharged Plaintiff Owens because of job performance issues and not due to his exercise of FMLA rights.

Count I of Plaintiffs' Complaint asserts Prairie State discriminated against Plaintiff Timothy Owens for exercising FMLA rights. A FMLA discrimination claim can proceed under either the direct or indirect method of proof. *See, e.g., Daugherty*, 577 F.3d at 751. Plaintiff cannot rely on the direct evidence method because he does not have any evidence sufficient to meet the direct evidence standard – instead he relies on timing and pretext, which are indirect evidence methods. *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 221 (7th Cir. 2015); *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 633-634 (7th Cir. 2009).

### A.   Plaintiff's FMLA discrimination claims fail under the indirect method because he cannot establish a prima facie case.

Under the indirect method of proof, the plaintiff must establish a prima facie case that: "(1) he engaged in statutorily protected activity; (2) he met his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated employees who did not engage in statutorily protected activity." *See, e.g., Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 634-635 (7th Cir. 2009). If the plaintiff is able to do so, the employer must present evidence of its legitimate, nondiscriminatory reasons for taking adverse action. *Id.*

Once the employer does so, the plaintiff must demonstrate the employer's reasons are false and are a pretext for discrimination. *Id.*

   1.   **Plaintiff was not meeting Prairie State's legitimate job expectations because he was abusing his position and not performing his job duties.**

Plaintiff cannot establish a prima facie case for FMLA discrimination because he was not meeting Prairie State's legitimate job expectations. Plaintiff was Prairie State's Facilities Manager. Material Facts at ¶ 1. In the role, he was responsible for overseeing Prairie State's rental properties. Material Facts at ¶ 2.

In mid-August, Mike Slade began noticing a decline in Timothy Owens' job performance. Material Facts at ¶ 6. On September 8, 2014, Mike Slade met with Timothy Owens to tell him about the recent slip in performance. Material Facts at ¶ 7. Mike Slade suggested Timothy Owens contact the employee assistance program to get help given the recent events, and Timothy Owens checked in with the program. Material Facts at ¶¶ 8-9. Timothy Owens admitted his performance had slipped and he needed help. Material Facts at ¶¶ 10-11.

Timothy Owens was responsible for maintaining a spreadsheet listing all of Prairie State's rental properties that also contained details about who was renting the property and confirming details about the written lease and the rental amount. Material Facts at ¶ 16. Timothy Owens did not maintain the spreadsheet and on September 19, 2014, Slade emailed Owens asking him to update it for a meeting Slade had later that day. Material Facts at ¶ 17. Timothy Owens prepared an updated spreadsheet that listed his wife as the tenant at both 4180 Clover and 5744 Biddleborn Road and a woman named Charlie Swankhouse as the tenant at 2953

Marigold Road. Plaintiff's spreadsheet listed rental amounts for each of the properties. Material Facts at ¶ 19.

When Timothy Owens went on FMLA Leave, Slade assumed his job duties. Material Facts at ¶¶ 14, 22. In doing so, Slade discovered that Shelley Owens and Charlie Swankhouse did not have written leases for the Prairie State properties at which they were residing and that Shelley Owens was not paying rent for the Biddleborn property and Charlie Swankhouse was not paying rent for the Marigold property. Material Facts at ¶ 20.

Although this alone is sufficient grounds for discharge, there was more. See Material Facts at ¶ 23. Owens admitted that if he did these things, he violated Prairie State's policies and it was grounds for discharge:

> Q.   Did you read Prairie State's code of ethics?
>
> A.   Yes.
>
> Q.   Okay.  Did you understand how important it was to comply with it?
>
> A.   Yes.
>
> Q.   You understood that you'd be fired if you didn't, didn't you?
>
> A.   Yes.

Material Facts at ¶ 34. Owens did not produce any evidence refuting Prairie State's honest belief he engaged in this misconduct.

Prairie State is entitled to summary judgment on Plaintiff Timothy Owens' FMLA discrimination claim because Timothy Owens cannot establish that he was meeting Prairie State's legitimate job expectations at the time he was discharged.

14

### 2.   Plaintiff did not identify any similarly situated employees who received more favorable treatment or otherwise offer any circumstantial evidence of a discriminatory motive.

Plaintiff also cannot establish the last element of his prima facie case – that Defendant treated other similarly situated employees more favorably – nor did Plaintiff identify any circumstantial evidence Defendant acted with discriminatory motive. Instead, Plaintiff summarily claims Defendant terminated him because it discovered he could require more leave than he initially requested. Material Facts at ¶ 36. However, such conclusory allegations are not sufficient on summary judgment. *See, e.g., Bordelon v. Bd. of Educ. of the City of Chicago*, 811 F.3d 984, 989 (7th Cir. 2016). Moreover, Plaintiff's initial FMLA request did not contain a definitive end date, Material Facts at ¶ 15, so there is no basis to believe that the length of Plaintiff's absence was a factor in Defendant's decision.

Summary judgment in Defendant's favor is warranted by Plaintiff's failure to establish this necessary element of his claim.

### B.   Plaintiff cannot establish Prairie State's legitimate, non-discriminatory reason was a pretext for FMLA discrimination.

Even if Plaintiff could establish a prima facie case of FMLA discrimination (which he cannot), Prairie State has a legitimate, non-discriminatory reason for terminating him – its investigation led Prairie State to believe that Owens violated its Employee Conduct and Work Rules policy, its Code of Business Conduct and Ethics policy, and that he was not candid, causing Prairie State to lose confidence in him. Material Facts at ¶ 33. Plaintiff admitted that if he did the things Prairie State believed he did, it would violate Company policy and be grounds for discharge:

Q.     Did you read Prairie State's code of ethics?

A.     Yes.

Q.     Okay.  Did you understand how important it was to comply with it?

A.     Yes.

Q.     You understood that you'd be fired if you didn't, didn't you?

A.     Yes.

Material Facts at ¶ 34. Because Plaintiff cannot establish Prairie State's reasons are pretextual, he cannot survive summary judgment.

To establish pretext, the plaintiff must show the employer's reasons were lies, *i.e.* phony reasons for its actions, rather than merely faulty reasoning or mistaken judgment. *See, e.g., Tibbs v. Admin. Office of the Ill. Courts*, 860 F.3d 502, 506 (7th Cir. 2017). A plaintiff's mere disagreement with the employer's reasons is not sufficient, and the plaintiff must bring forth <u>evidence</u> the employer's reasons are factually baseless, did not actually motivate the discharge, or were not sufficient to motivate the termination. *Id.* (citations omitted).

In this case, Prairie State reasonably concluded Plaintiff Timothy Owens abused his position to benefit himself by providing rent-free and lease-free accommodations for his wife and another woman with whom he had a personal relationship. Plaintiff may disagree with Prairie State's conclusions, but he cannot show Prairie State did not honestly believe them, that the reasons were baseless, or that they did not suffice as bases for Prairie States' decision to discharge Plaintiff. *See, e.g., Little v. Ill. Dept. of Revenue*, 369 F.3d 1007, 1012 (7th Cir. 2004). To the

contrary, Owens himself admitted if he did the things Prairie State claimed, it was a policy violation and sufficient grounds for termination. Material Facts at ¶ 34.

Summary judgment on Plaintiff Timothy Owens' FMLA discrimination claim is warranted because he cannot establish Prairie State's legitimate and non-discriminatory reasons for his discharge are pretexts for FMLA discrimination.

III.   **Plaintiffs' Intentional Infliction of Emotional Distress claim fails because Prairie State acted for legitimate reasons.**

Plaintiffs cannot establish any of the essential elements of an intentional infliction of emotional distress claim: (1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended that its conduct should inflict severe emotional distress, or knew that there was a high probability that its conduct would cause severe emotional distress; and (3) the defendant's conduct in fact caused severe emotional distress. *Zoretic v. Darge*, 832 F.3d 639, 645 (7th Cir. 2016); *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 79–80 (Ill. 2003); *Doe v. Calumet City*, 641 N.E.2d 498, 506–07 (Ill. 1994).

The sole basis for Plaintiffs' intentional infliction of emotional distress claim is that Prairie State evicted Ms. Owens from its rental property located at 5744 Biddleborn. Prairie State asked Timothy Owens to clear out the Biddleborn address because it found out that there was not a written lease and no rent was being paid, which is neither extreme nor outrageous as a matter of law. Material Facts at ¶ 20. At the time Prairie State required Shelley Owens to move out of the Biddleborn property, both Timothy and Shelley Owens had a signed lease agreement and were paying rent for a second Prairie State house, the 4180 Clover Road property.

Material Facts at ¶ 3. 5744 Biddleborn and 4180 Clover are both located on Prairie State's property. Material Facts at ¶¶ 16-19. Prairie State was not targeting Ms. Owens, as reflected in it also directing Mr. Owens to clear Ms. Swankhouse from its rental property at 2953 Marigold Road for the same reasons. Material Facts at ¶ 21.

Prairie States' conduct was neither extreme nor outrageous as a matter of law. Courts apply an objective standard considering all of the facts and circumstances in determining whether conduct is extreme and outrageous. *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988). "[M]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" are not actionable. *Id.* A defendant's power or authority over the plaintiff and threat to abuse the power or authority can suggest outrageous conduct. *Id.* at 810. However, when the plaintiff alleges a defendant abused its power, courts look to another critical consideration – whether the defendant reasonably believed its objectives were legitimate. *Id.* (emphasis added).

In this case, Plaintiffs claim Prairie State was in a position of power and authority over Mr. Owens, whom it employed, and Ms. Owens, who lived in its rental property. Even assuming Prairie State's position of authority over the Owens', Prairie State did not threaten to abuse that power. Instead, when it found out Mr. Owens had moved Ms. Owens into a different rental property with no lease and no rental payments, and had lied about both, it demanded that Mr. Owens clear out the rental property. Material Facts at ¶¶ 19-20.

18

Prairie State's conduct was not extreme or outrageous with respect to Timothy Owens. Illinois is an at-will employment state and in order to protect that status and prevent the intentional infliction of emotional distress claims from eroding that status, Illinois courts normally do not find an employer's conduct to be extreme or outrageous. *See, e.g., Schroeder v. RGIS, Inc.*, 992 N.E.2d 509, 517–18 (Ill. Ct. App. 2013); *Ulm v. Memorial Med. Cent.*, 2012 IL App (4th) 110421, ¶ 41 (Ill. Ct. App. 2012); *Richards v. U.S. Steel*, 869 F.3d 557, 567 (7th Cir. 2017). Typically, courts do not find an employer's conduct sufficiently extreme or outrageous except in circumstances in which an employer uses its power over its employee to coerce the employee into committing a crime. *Ulm*, 2012 IL App (4th) 110421 at ¶ 43; *Welsh v. Commonwealth Edison Co.*, 713 N.E.2d 679, 684 (Ill. Ct. App. 1999); *Richards*, 869 F.3d at 567. Prairie State's directing Ms. Owens to move out of a rental property she was occupying without proper authorization, without a lease, and without paying rent is not sufficiently extreme, even though Mr. Owens was participating in drug rehabilitation, particularly because she had a legal right to occupy another rental property, also on Prairie State's property.

Prairie State's conduct towards Ms. Owens was also not extreme or outrageous. Seventh Circuit courts have found that even an allegedly wrongful eviction "though unpleasant and worrisome, simply is not the type of 'extreme and outrageous' conduct necessary to form the basis of an intentional infliction of emotional distress claim." *Mumm v. Wetter*, 2006 WL 163151, at *2 (N.D. Ill. Jan. 20, 2006); *see also, Zoretic v. Darge*, 832 F.3d 639, 645 (7th Cir. 2016). In this

case, Prairie State merely directed Ms. Owens to vacate a property that she did not have proper authorization to reside in and for which she was not paying rent. Prairie State had a legal right to do so, and Ms. Owens had an alternate residence on Prairie State's property at the time of the eviction.

Prairie State's conduct towards the Owens' was reasonable and its intentions legitimate. At a minimum, Prairie State's conduct is not "beyond all possible bounds of decency" and would not rouse an average community member to resent it and exclaim "Outrageous!" *See, Ulm*, 2012 IL App (4th) 110421 at ¶ 40. Summary judgment on Counts II and III is appropriate because Plaintiffs cannot establish Prairie State's conduct was extreme or outrageous.

## Conclusion

Summary judgment is appropriate because Mr. Owens received all of the FMLA lave to which he was entitled and he was not reinstated for legitimate, non-discriminatory reasons that Prairie State honestly believed – including Mr. Owens abusing his position to provide rent-free and lease-free living in two of its properties. Prairie State's conduct in evicting the individuals residing at those two homes is not extreme or outrageous – particularly because Ms. Owens had another residence on Prairie State property into which to move.

Respectfully submitted,

**HESSE MARTONE, P.C.**

By:    /s/ Matthew B. Robinson
       Andrew J. Martone, #6203524
       Matthew B. Robinson, #6283854
       Gilbert B. Williams, #66322881
       13354 Manchester Road, Suite 100
       St. Louis, MO 63131
       (314) 862-0300 – Telephone
       (314) 862-7010 – Facsimile
       andymartone@hessemartone.com
       mattrobinson@hessemartone.com
       gilwilliams@hessemartone.com

       *Attorneys for Defendant and*
       *Counterclaim-Plaintiff Prairie State*
       *Generating Company*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing was served on October 6, 2017 via electronic mail and U.S. Mail, first class postage prepaid upon the following to:

       Greg Roosevelt
       Roosevelt Law Office
       610 St. Louis Street
       Edwardsville, IL 62025
       gregroosevelt@gmail.com

       *Attorneys for Plaintiffs*
       *Timothy Owens and Shelley Owens*

       /s/ Matthew B. Robinson

## Index of Exhibits and Attachments

Deposition of Timothy Owens dated August 31, 2017 ("TOwens Depo.")

Deposition of Michael Slade dated June 20, 2017 ("Slade Depo.")

Deposition of Shelley Owens dated August 31, 2017 ("SOwens Depo.")

Affidavit of Rita Bauman dated October 4, 2017

      Exhibit A – FMLA Spreadsheet

Exhibit 3 – Letter discharging T. Owens dated October 31, 2014

Exhibit 5 – Letter terminating Owens' lease dated October 31, 2014

Exhibit 6A – FMLA Certification dated October 3, 2014

Exhibit 12 – Spreadsheet of rental properties

Plaintiffs' Exhibit 1 – Memorandum of M. Slade dated September 8, 2014

Plaintiffs' Exhibit 3 - Memorandum of M. Slade dated September 19, 2014

Plaintiffs' Exhibit 5 – Text Messages

Plaintiffs' Exhibit 8 – Email with Memorandum dated October 27, 2014

Plaintiffs' Exhibit 10 – Code of Business Conduct and Ethics

Plaintiffs' Exhibit 11 – Employee Conduct and Work Rules

Plaintiffs' Exhibit 12 – Memorandum of M. Slade dated October 27, 2014

Plaintiffs' Exhibit 13 – Memorandum of M. Slade dated October 3, 2014